UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID M. LAWTON,

                                        Plaintiff,

          v.                                                    7:10-CV-256
                                                                (FJS/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

LAWRENCE D. HESSLER, ESQ., for Plaintiff
ELLEN E. SOVERY, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the

Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to

28 U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance

with General Order 18.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on November 4,

2007, claiming disability since May 7, 2007.  (Administrative Transcript ("T.") at 88-

90).  Plaintiff's application was initially denied on February 26, 2008 (T. 53-56), and

he requested a hearing before an ALJ (T. 62).  The hearing, at which plaintiff

testified, was conducted on October 6, 2009.  (T. 10-36).

In a decision dated October 26, 2009, the ALJ found that plaintiff was not

disabled.  (T. 43-52).  The ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied plaintiff's request for review on

February 23, 2010.  (T. 1-5).

## II.    ISSUES IN CONTENTION

The plaintiff makes the following claims:

1.    The ALJ erroneously failed to properly evaluate the medical evidence and opinions of record.  (Plaintiff's Brief ("Pltf.'s Brief"), Dkt. No. 11, at 8-12).

2.    The ALJ failed to properly apply the required steps in the special technique required for evaluating mental impairments.  (Pltf.'s Brief at 12-17).

3.    The ALJ's residual functional capacity (RFC) determination erroneously failed to account for all of plaintiff's physical limitations.  (Pltf.'s Brief at 17-19).

4.    The ALJ failed to properly assess plaintiff's subjective allegations of pain and disabling symptoms.  (Pltf.'s Brief at 19-22).

5.    The ALJ erroneously determined that plaintiff can return to his past work.  (Pltf.'s Brief at 22-24).

This court concludes, for the reasons set forth below, that the ALJ properly

evaluated the medical and opinion evidence regarding the plaintiff's physical

impairments, and that there was substantial evidence supporting the RFC

determination with respect to exertional impairments.  The ALJ appropriately

assessed plaintiff's subjective allegations of pain and disabling physical symptoms,

and there was substantial evidence to support the ALJ's conclusion that plaintiff's

statements concerning the intensity, duration, and limiting effects of his physical

symptoms were not entirely credible.[1]   The ALJ properly applied the special technique to evaluate plaintiff's mental limitations, and there was substantial evidence supporting the finding that plaintiff's mental impairments were not "severe."   However, this court finds that the ALJ erred by failing to consider plaintiff's mental impairments in formulating the RFC and evaluating whether plaintiff could perform his past work.   Accordingly, it is recommended that the case be remanded so that the ALJ properly considers plaintiff's mental abilities in determining the RFC and assessing what work, if any, plaintiff can perform.

## III.   MEDICAL EVIDENCE

Plaintiff's medical history involves diagnoses and treatment for a variety of physical symptoms relating to, *inter alia*, rheumatoid arthritis, Reiter's syndrome and/or osteoarthritis; fibromyalgia; and diabetes mellitus.   At various times, plaintiff was also treated for anxiety, depression, and symptoms of post-traumatic stress disorder.   The medical evidence of record begins with documentation of plaintiff's occasional visits to the Emergency Department at Carthage Hospital between 2000 and 2007 (T. 180-219), and treatment notes from his primary health care provider–Family Practice Associates–between 2001 and 2007 (T. 220-274).   At various times, plaintiff was referred to rheumatologists, including Dr. Rathika Martyn (T. 313) and Dr. Hom P. Neupane (T. 314-320) in 2008.[2]   Between

---

[1] As noted below, in assessing the credibility of plaintiff's complaints of subjective symptoms, the ALJ considered only physical, but not mental health symptoms.  (T. 48-51).

[2] The treatment notes of Family Practice Associates also indicates that plaintiff was referred to other neurologists, including Dr. Charles Wasicek, between 2002 and 2004.  (T. 122, 247, 252-253).

September 2008 and June 2009, plaintiff was treated at the Veterans Administration Medical Center in Syracuse, primarily (but not exclusively) for mental health issues. (T. 321-348).

In January 2009, plaintiff was examined, in connection with his application for disability insurance, by a consulting internist, Dr. Brij Sinha (T. 275-278), as well as a consulting psychologist, Dr. Jeanne A. Shapiro (T. 279-283).  A state-agency psychiatrist, Dr. W. Skranovski, completed a psychiatric review technique and rating of plaintiff's functional limitations in February 2008.  (T. 286-99).

The court will not set forth here the substance of the medical evidence, which is summarized in both the plaintiff's brief (Pltf.'s Brief at 1-5) and the Commissioner's brief (Dkt. No. 14 at 2-7).  Relevant aspects of the medical evidence are discussed below in the course of analyzing the issues disputed by the parties.

## IV.   TESTIMONY AND NON-MEDICAL EVIDENCE

Born in 1958, plaintiff was age 51 on the date of the Commissioner's decision. He attended two years of college and worked as a drug and alcohol counselor for approximately 17 years.  (T. 11-12).

In a questionnaire completed on December 12, 2007 in connection with his disability application, plaintiff stated that his position as a clinical director required one hour of walking, two hours of standing and sitting, and three hours of writing, typing or handling small objects each day.  He did not engage in climbing, stooping, kneeling, crouching, crawling, handling, grabbing or grasping big objects.  Plaintiff frequently lifted less than 10 pounds,  and never lifted more than 20 pounds.  (T.

116).

In a February 21, 2008 disability report, plaintiff indicated that he stopped working on May 7, 2007 because his depression intensified after the death of his mother, and because traveling caused his pain to be unmanageable. (T. 120). In this report, plaintiff noted that his position as a counselor required two hours of walking and sitting; two and a half hours of standing and crouching; eight hours of writing, typing, or handling small objects; but no climbing, stooping, or crawling. (T. 121). Thereafter, during a February 25, 2008 phone interview, plaintiff stated that, while he may have carried 20 pounds of supplies from a car to the office once per week, the majority of lifting was less than two pounds. (T. 129).

Plaintiff testified before the ALJ on October 6, 2009. (T. 8). Plaintiff considered his arthritis and diabetes to be his most serious physical conditions. Plaintiff claimed his arthritis has gotten progressively worse over the years and has caused him pain in his hands, shoulders, neck, knees, and ankles. (T. 19). While his constant pain levels with this condition are a six or a seven on a ten-point pain scale, plaintiff suffers flare-ups three to four times per month, lasting two to three days each, during which his pain rates a "ten." (T. 19, 21, 34). He stated that his pain constantly distracts him and detracts from his ability to concentrate. (T. 35).

With respect to his diabetes, plaintiff noted that he has been medicated for five to seven years. He experiences bouts of shaking, blurred vision, and nausea when his blood sugar gets too low. (T. 22). Plaintiff also claimed to have diabetic neuropathy, causing a loss of feeling in his feet four to five times per week. (T. 25).

Plaintiff testified that his depression began in 1983, and has progressively worsened over the years.  (T. 26).  His symptoms include lack of interest in things, no motivation, thoughts of failure, suicidal ideations, dramatic mood swings, and agitation.  (T. 26-27).  Plaintiff stated his mental health symptoms interfered with his job and affected his ability to work with others, particularly authority figures.  (T. 27, 35).

Plaintiff initially testified that he left his position as the director of substance abuse programs due to stress and pain.  (T. 13).  However, upon further questioning, he stated that his employer forced him to resign or face termination.  (T. 13-14).  Plaintiff also testified that his former position required him to repeatedly carry 50 to 60 pounds daily up at least two flights of stairs.  (T. 18-19).

## V.    THE ALJ'S DECISION

In the ALJ's October 26, 2009 decision, he acknowledged that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011, and found that plaintiff had not been engaged in substantial gainful activity since May 7, 2007–the alleged onset date.  (T. 45).  The ALJ found that, although plaintiff had at least some mental health limitations, these conditions did not more than minimally affect plaintiff's ability to work and were, therefore, not "severe." (T. 46-47).  The ALJ concluded that plaintiff's rheumatoid arthritis/Reiter's Syndrome, fibromyalgia, osteoarthritis, and diabetes mellitus, were "severe" conditions, but found that they did not rise to the level of any impairment listed in Appendix 1 of 20 C.F.R., Part 404, Subpart P.  (T. 45-47).   He determined that

plaintiff retained the residual functional capacity for light work with occasional

postural limitations, and found that plaintiff's subjective allegations of more

significant physical symptoms and restrictions were not credible.  (T. 48-50).  The

ALJ found that plaintiff could perform his past work as a drug/alcohol counselor and

clinic director, and thus, that he was not disabled.  (T. 51).

## VI.    APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or

SSI disability benefits must establish that he is "unable to engage in any substantial

gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months . . . ."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate area
> in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520

to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which

significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. § 404.1520.

The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that his impairment prevents him from

performing his past work, the burden then shifts to the Commissioner to prove the

final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supports the decision.  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)

(citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may

not affirm an ALJ's decision if it reasonably doubts whether the proper legal

standards were applied, even if the decision appears to be supported by substantial

evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial

factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d

582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## VII.   ANALYSIS

### A.   The ALJ's Evaluation of the Medical Evidence and the RFC Determination Regarding Physical Limitations

The ALJ found that the plaintiff suffered from a number of "severe" physical impairments–rheumatoid arthritis/Reiter's Syndrome (for the period it was active),

9

fibromyalgia, osteoarthritis of the cervical spine and bilateral knees, and diabetes mellitus.  (T. 45).  He determined that plaintiff did not have an impairment or combination of impairments which met or equaled the relevant criteria contained in the Listing of Impairments.  (T. 47).[3]  The ALJ next determined that plaintiff retained an RFC for a limited range of light work,–*i.e.*, he was able, in an eight-hour workday, to stand and walk for at least two hours and sit for six hours; he was capable of lifting ten pounds frequently and 20 pounds occasionally; and he could occasionally stoop, kneel, crouch, or crawl.  (T. 48).

Plaintiff argues that, in evaluating the medical evidence and determining his RFC, the ALJ improperly engaged in "cherry picking," by selectively crediting the evidence that supported the ALJ's conclusions, and ignoring or not giving proper weight to contrary evidence.  The ALJ must set forth the essential considerations upon which the decision was based with sufficient specificity so as to enable the reviewing court to determine whether the disability determination was supported by substantial evidence.  However, an ALJ is not required to explicitly set forth and analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d

---

[3]  The ALJ specifically considered Listing Sections 14.09 (inflammatory arthritis) and 9.08 (diabetes mellitus).  (T. 47).  While the ALJ did not elaborate on his analysis, the medical evidence he summarized clearly was not indicative of impairments that meet the criteria of Section 14.09–"persistent inflammation or deformity in one major peripheral weight-bearing joint resulting in the inability to ambulate effectively . . . or one major peripheral joint in each upper extremity resulting in the inability to perform fine and gross movements effectively . . ."  Nor does the medical evidence establish that plaintiff met the criteria for diabetes mellitus in Section 9.8–"neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station."

Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  This court concludes that the ALJ appropriately considered the relevant medical evidence and opinions, and that his findings as to plaintiff's RFC, with respect to physical impairments, are supported by substantial evidence.

As the ALJ noted, plaintiff reported a history of rheumatoid arthritis from at least 2001.  While various medications generally managed plaintiff's symptoms, he experienced periodic exacerbations or flare-ups.  (T. 45).[4]  Plaintiff went to the emergency room to address flare-ups in January and October 2007, both of which primarily affected his shoulders.  In each instance, an injection of Toradol, as short-term anti-inflammatory medication, provided plaintiff with substantial pain relief.  (T. 45-46, 49; 211-219).  The examination in October 2007 revealed pain and mild tenderness in plaintiff's right arm and shoulder, but a full range of motion and no pain in his knees, hands, or other joints.  (T. 49; 217, 218).

In January 2008, plaintiff was examined by Dr. Sinha, whose observations and conclusions were referenced at length by the ALJ in support of his RFC findings.[5]

_____

[4] Plaintiff was also diagnosed with Reiter's Syndrome, a form of "reactive" arthritis in 2006.  The ALJ concluded, based on medical opinions discussed below, that it was unclear whether plaintiff suffered from rheumatoid or reactive arthritis.  However, he concluded that plaintiff had "severe" "inflammatory arthritis"–a more generic term covering both rheumatoid arthritis and Reiter's Syndrome–for the period it was active.  (T. 45 & n.1).  In January 2008, an examining, consulting doctor concluded that plaintiff was asymptomatic for Reiter's syndrome.  (T. 275).  A rheumatologist who briefly interviewed plaintiff in April 2008, before plaintiff walked out, found it unlikely that plaintiff had suffered from both rheumatoid arthritis and Reiter's syndrome.  (T. 313).

[5] The report of a consulting physician who examined the claimant, may constitute substantial evidence in support of an ALJ's decision.  *See, e.g., Monguer*, 722 F.3d at 1039.

(T. 49, 50-51).  Plaintiff complained to Dr. Sinha that, for many years, he suffered from rheumatoid arthritis that affected most of his joints, although his present pain was localized to his shoulders and knees.  (T. 49; 275).  The doctor found that plaintiff's gait and station were normal, and he could walk on heels and toes without difficulty.  (T. 49; 276).  Plaintiff could squat fully, and did not use assistive devices or need help changing clothes or getting on and off the examination table.  He was able to rise from a chair without difficulty.  (T. 49; 276).  Plaintiff's cervical and lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  There was no evidence of scoliosis, kyphosis, or abnormality in the thoracic spine.  Range of motion of the shoulders was limited, but plaintiff had full range of motion of the elbows, forearms, wrists, knees and ankles bilaterally.  (T. 49; 277).  Dr. Sinha found no evidence of arthritic changes to plaintiff's hands.  (T. 49; 275).

Based upon his examination, Dr. Sinha opined that plaintiff had mild to moderate limitations due to arthritis in the shoulders and knees for prolonged walking, bending, and lifting.  (T. 50; 278).  Dr. Sinha's assessment is consistent with the ALJ's RFC finding that plaintiff could tolerate two hours of walking and standing, as well as six hours of sitting, in an eight-hour workday.

The ALJ summarized the conclusions of several rheumatologists who examined plaintiff between 2002 and 2008.  (T. 50).  In July 2008, Dr. Neupane diagnosed plaintiff with fibromyalgia, and noted no evidence of active arthritis.  (T. 46, 50; 316).  Dr. Neupane subsequently reported that x-rays revealed minimal

degenerative changes in both knees, degenerative changes of the cervical spine, and normal results for the hands and wrists.  (T. 46, 49; 318).  In an August 2008 follow-up visit, plaintiff complained of two flare-ups affecting his hands in the past month, both of which resolved spontaneously.  Upon examination, there was no sign of any swelling or signs of inflammation in plaintiff's hands.  (T. 49; 318).  There was no restriction of neck movement, no tenderness elicited at the fibromyalgia tender points, and no swelling or joint effusion of the knees.  (T. 319).  Except for pain on hyperextension of both knees, the rest of the musculoskeletal examination was normal.  Dr. Neupane diagnosed osteoarthritis of the spine and knees.  He concluded that plaintiff's rheumatoid arthritis was inactive at the time of the examination, and detected no signs of inflammatory arthritis.  (T. 46, 319).

Plaintiff argues that the opinion of registered physician assistant, Michael D. Hinman, of Family Practice Associates that, "due to increasing pain, patient is unable to work at this time," is due some, and arguably, significant weight.  (Pltf.'s Brief at 17).  Although PA Hinman did treat plaintiff for an extended period, his opinion is not entitled to controlling weight, because he is not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a), 404.1527(d)(2).  Further, the opinion is not entitled to significant weight because it is inconsistent with substantial evidence from acceptable medical sources (as discussed above), and is not supported by treatment notes from Family Practice Associates.[6]  *See* Security Ruling (SSR) 06-03p (opinions

_____

[6] In the treatment notes from December 6, 2007, where PA Hinman stated plaintiff was unable to work, his only observations regarding his musculoskeletal system was that the patient "reports arthritis, joint pain."  (T. 223).  PA Hinmann referred plaintiff to a rheumatologist for further examination.  (T. 221).

from "non-medical sources" who have seen the individual in their professional capacity should be evaluated  using the applicable factors, including how consistent the opinion is with other evidence and the degree to which the source presents relevant evidence to support an opinion).  Moreover, an opinion that an individual is unable to work or is disabled is not entitled to any weight under the regulations, because that constitutes an ultimate opinion reserved to the Commissioner. See 20 C.F.R. § 404.1527(e)(1).  The ALJ appropriately considered the medical records of PA Hinman and Family Practice Associates (T. 46, 47 (referencing Exhibit 9F)), but properly did not give significant weight to PA Hinman's unsupported opinion.

In connection with his hearing in October 2009, plaintiff claimed that he suffered from diabetes for more than seven years,[7] and frequently experienced blurry vision, stomach aches, shakes, and loss of feeling in his feet.  He also claimed that he experienced a diabetic seizure on July 3, 2009.  (T. 22, 25; 46).  The ALJ cited contrary medical evidence from the VAMC in November 2008, indicating that plaintiff's diabetes was controlled by diet and oral medication, and finding no diabetic retinopathy.  (T. 50; 333, 341).  He also noted that plaintiff refused to be taken to the hospital following the alleged diabetic seizure, and that it was unclear from the rescue squad report what caused the plaintiff to fall.  (T. 50; 159).  The ALJ's finding that plaintiff's diabetes did not interfere with his ability to perform modified "light work" is also consistent with other medical records, which do not

---

[7] Plaintiff's various statements have been inconsistent about the duration of his diabetes. (T. 22-25).  He advised the VAMC in November 2008, that he had suffered diabetes for about one year.  (T. 332-333, 341).

reflect any other complaints regarding health problems he later claimed to experience as a result of his diabetes.  During an October 2007 examination at Carthage Hospital, plaintiff denied any numbness, tingling, or changes in sensation of any of his extremities, which would suggest the absence of diabetic neuropathy.  (T. 217).

The totality of the medical evidence corroborates the ALJ's RFC determination that plaintiff's rheumatoid arthritis/Reiter's Syndrome, fibromyalgia, osteoarthritis of the cervical spine and bilateral knees, diabetes mellitus, did not result in functional limitations that prevented him from performing specified lifting, sitting, standing, and walking requirements.  However, as discussed below, in making his RFC determination, the ALJ erred by failing to consider plaintiff's mental impairments, even though they were properly found not to be "severe."

### B.     The ALJ's Assessment of Plaintiff's Claims of Subjective Symptoms

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 404.1529(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c).  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3).

The plaintiff initially claimed that his employment ended because, after his mother died, the stress of the job caused frequent flare-ups of his arthritis, causing his pain to become unmanageable.  (T. 13, 120).   He testified, at the hearing, that he suffered from rheumatoid arthritis for ten years, and that it had "progressively gotten worse."  (T. 19).  The arthritis caused pain, most often in plaintiff's shoulders and knees, but also in his hands, neck, and ankles.  Plaintiff rated the pain as a six to

seven on a scale of ten; but stated that he experienced flare-ups three to four times per month, which lasted several days and which increased the pain to ten. (T. 19, 21-22). Plaintiff testified that the pain in his hands made it difficult for him to write, which created performance problems at his prior job. (T. 30). He could normally perform certain household chores such as vacuuming and washing dishes, but not when his arthritis flared up. But also plaintiff testified that he could not perform his old job as a drug/alcohol counselor, even during periods when his arthritis was not flaring up. (T. 33-34). As discussed above, plaintiff claimed frequent symptoms from diabetes, including blurry vision, the shakes, and neuropathy in his feet. (T. 22, 25). Finally, plaintiff testified that his depression and agitation interfered "a lot" with his prior job. (T. 26-27).

The ALJ summarized plaintiff's claims regarding pain and other subjective symptoms and limitations. (T. 46, 48). After careful review of the medical evidence, the ALJ concluded that plaintiff's medically determinable physical impairments could reasonably be expect to cause the alleged symptoms. However, the ALJ found that "plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with his activities of daily living, the objective medical evidence, and the medical opinion of record." (T. 48-49). In his analysis, the ALJ appropriately discussed the plaintiff's daily activities (T. 47, 48, 49, 50); the specifics of his physical symptoms (T. 45-47, 48); factors which aggravated his symptoms (T. 48); the types and effectiveness of his medications (T. 46, 48, 49); and other measures taken by plaintiff to relieve

symptoms (T. 48 (plaintiff takes baths to numb the pain)).

As discussed above, the ALJ evaluated the objective medical evidence and reasonably determined that it was inconsistent with plaintiff's subjective claims regarding his physical symptoms and limitations, and consistent with the ALJ's RFC finding.  (T. 49-51).  The ALJ correctly determined that plaintiff's rheumatoid arthritis, including occasional exacerbations, were controlled with medication.  (T. 49).  While plaintiff testified that his flare ups occurred three or four times per month (T. 21), he reported, at the Carthage Hospital emergency room on October 8, 2007, that he had gone approximately nine months without any difficulty since his last exacerbation in January 2007.  (T. 216-17).  Plaintiff testified, at the hearing, that he had difficulty writing as a result of arthritis pain, which negatively impacted his job performance.  (T. 30).  On at least one occasion, he complained of arthritic flare-ups that affected his hands, which resolved themselves "spontaneously."  (T. 318). However, the medical reports did not otherwise corroborate any evidence of arthritis symptoms that involved his hands.  (T. 217-18, 275, 316, 319).

In evaluating plaintiff's credibility, the ALJ also noted inconsistencies between various statements regarding his alleged physical symptoms and limitations. The ALJ noted that the plaintiff's admitted activities of daily living contradicted his subjective claims of limitations, and supported the ALJ's findings regarding plaintiff's RFC.  During a consultative examination with Dr. Shapiro in January 2008, plaintiff acknowledged that he could take care of his personal hygiene and grooming, cook and prepare limited meals, do some general cleaning and laundry,

manage money, drive, and do limited shopping.  (T. 49; 282).  In a function report prepared in December 2007, plaintiff admitted that he could use a computer for a limited time, snow blow the driveway when needed, paint, do some yard work, vacuum, and do laundry.  (T. 104, 107-108).

Plaintiff inconsistently reported the physical requirements of his previous position.  On two occasions prior to the ALJ hearing, plaintiff reported that his position required at most lifting 20 pounds once a week, and never more than that. (T. 116, 129).  During an examination at Carthage Hospital in March 2005, plaintiff reported that the position involved mainly paperwork, and did not require much lifting or use of his shoulder.  (T. 201-202).  However, at the ALJ hearing, plaintiff testified that he was required to repeatedly lift 50 to 60 pounds daily up flights of stairs.  (T. 18-19).

When probed during the October 2009 hearing (T. 13-14), the plaintiff admitted that he resigned from his job in May 2007 after being advised that he had the choice to resign or be terminated.  In the Fall of 2008, he advised treating sources at the VAMC that he was forced to resign his job at the Canton/Potsdam Hospital "due to politics."  (T. 335, 346).  The ALJ concluded that this evidence contradicted the plaintiff's suggestion that his decision to stop working related to his alleged disability.  (T. 50).

The ALJ also noted the fact that plaintiff had been able to work at his prior job through May 2007 despite suffering from arthritis and diabetes "which had not

worsened,"[8] undermined his claims that was now unable to work because of those impairments.  (T. 50).  Plaintiff correctly argues that his good past work history is a factor supporting his credibility.  (Pltf.'s Brief at 20-21).  However, the ALJ properly relied on the contrary medical evidence, plaintiff's admitted daily activities, and the inconsistencies in his various statements in making his credibility assessment.  *See, e.g., Carvey v. Astrue*, No. 09-4438-cv, 2010 WL 2264932, at *3 (2d Cir. June 7, 2010) (notwithstanding plaintiff's strong work history, the ALJ reasonably relied on contrary medical evidence and plaintiff's own account of daily activities in finding his testimony regarding the severity of his impairment as "not entirely credible").

While plaintiff routinely complained of pain, "disability" requires more than the inability to work without pain.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  To be disabling, pain must be so severe as to preclude any substantial gainful activity.  *See* 42 U.S.C. § 423 (d)(1), (d)(5)(A).  As the ALJ found, the totality of the medical and other evidence does not corroborate plaintiff's claims regarding the extent of his pain and physical limitations.  The ALJ was not obligated to accept plaintiff's testimony about his subjective symptoms and restrictions without question, and has the discretion to evaluate credibility in light of

---

[8] During his testimony, plaintiff claimed that his arthritis and diabetes both got progressively worse over time.  (T. 19, 22-23).  However, during an examination with a rheumatologist in July 2008, plaintiff reported that, while his arthritis pain rated seven or eight on a scale of ten several years ago, it now only rated a three or a four out of ten and "only occasionally" a seven.  Plaintiff also reported that, in the past, his flare-ups involved both pain and swelling and redness in his joints; now, he mainly has symptoms of pain without swelling and redness.  (T. 314).  As discussed above, there was minimal corroborating medical evidence supporting plaintiff's alleged diabetes symptoms.  Thus, there was substantial evidence supporting the ALJ's conclusions that plaintiff's physical symptoms were not worse now, as compared to the prior period where he was able to work.  (T. 50).

the evidence in the record.  *See, e.g., Aponte v. Secretary, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (it is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of the witnesses, including the claimant).  A court must uphold the Commissioner's decision to discount a claimant's complaints of pain and other subjective complaints if the finding is supported by substantial evidence.  *Id.*; 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.")  This court concludes that there is substantial evidence supporting the ALJ's determination that plaintiff's statements concerning the intensity, duration and limiting effects of his physical symptoms were not entirely credible.

### C.      The ALJ's Evaluation of Plaintiff's Mental Health

#### 1.      The Severity of Plaintiff's Mental Impairments

Plaintiff argues that the ALJ failed to apply the required steps in the special technique specified for evaluating mental impairments.  (Pltf.'s Brief at 12-17).  However, The ALJ properly completed a psychiatric review technique, as set out in the disability regulations for evaluating mental disorders.  20 C.F.R. § 404.1520a.

If a claimant establishes that he has a medically determinable mental impairment, then "the symptoms, signs, and laboratory findings that substantiate the presence of the impairment" must be specified.  20 C.F.R. § 404.1520a(b)(1).  Then, "the degree of functional limitation resulting from the impairment(s)" must be rated.  20 C.F.R. § 404.1520a(b)(2).  Functional limitation is rated in four broad areas:

"Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3).  In the first three areas of functioning, limitations are rated "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  Episodes of decompensation are rated none through four or more.  *Id.*  The severity of the mental impairment is then determined based upon the functional limitation found.  20 C.F.R. § 404.1520a(d).  If the ALJ "rates the degree of limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, [the ALJ] will generally conclude that [the claimant's] impairment(s) [are] not severe." 20 C.F.R. § 404.1520a(d)(1).

The ALJ's decision did specify symptoms, signs, and medical findings regarding plaintiff's reported anxiety, depression, and post-traumatic stress disorder ("PTSD") from as early as 2004 through mid-2009.  (T. 46-47).[9]  The ALJ then evaluated plaintiff's functionality in the broad areas set out in the applicable regulations, concluding that the plaintiff had no restrictions in performing activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (T. 47).

The ALJ's finding that the plaintiff's mental health issues did not affect, more than minimally, his ability to engage in work activities, and thus were not "severe" for the purposes of a disability adjudication, were supported by substantial

---

[9] The ALJ also considered plaintiff's past history of alcohol and substance abuse.  Given that plaintiff had remained sober for more than 25 years, and the medical evidence that his alcohol and substance abuse had long been in remission, ALJ found no "severe" disorder.  (T. 46).  Plaintiff apparently does not take issue with this finding.  (Pltf.'s Brief at 13).

evidence.  The ALJ appropriately noted records of mental health examinations of plaintiff (some by treating sources), as well as many of plaintiff's own statements, in support of the administrative findings that plaintiff's mental health issues were not severe.  While plaintiff reported increased anxiety and depression in May 2007 after he quit his job, and following the death of his mother (T. 228-29), he denied anxiety and depression with his current medication during medical check-ups at Family Practice Associates in August 2007 (T. 226-227) and December 2007 (T. 223).

In the Fall of 2008, plaintiff sought treatment at the Veterans Administration Medical Center for renewed depression and symptoms of PTSD.  (T. 345-48).[10]  Dr. Babiak, a VAMC psychiatrist who found significant evidence of depression and PTSD symptoms in November 2008,[11] changed plaintiff's medication.  (T. 335-340).[12]  During follow-up appointments with Dr. Babiak in April 2009 and June 2009, plaintiff reported that the new medication "helped a lot," and his mood and affect were found to be "euthymic."  (T. 322-329).  The last reported psychiatric examination at the VAMC reflected "normal" or appropriate findings for the various mental health criteria, including recent and remote  memory, attention, and concentration.  (T. 326).

---

[10] Plaintiff reportedly stated, to VAMC personnel, "I want to rule out PTSD.  I want to know if I'm crazy."  (T. 346).

[11] Contrary to plaintiff's testimony during the hearing "that I might be better off if I wasn't around" (T. 26), he denied any suicidal ideation during his treatment at the VAMC in the Fall of 2008 and 2009.  (T. 324, 332, 337-38, 345, 347).

[12] Plaintiff was prescribed Effexor for depression and Geodon–an anti-psychotic medication–for PTSD.  (T. 339-40).

In January 2008, plaintiff was examined by a consulting psychologist, Jeanne A. Shapiro, Ph. D.  Plaintiff complained of difficulty falling asleep and decreased appetite and sexual functioning; but he did not report any significant manic or anxiety-related symptoms, or symptoms of a formal thought disorder or cognitive dysfunction.  (T. 280).  Upon a mental status examination, plaintiff was found to be responsive to questions and cooperative.  His manner of relating, social skills, and overall presentation were adequate.  Plaintiff's thought processes were coherent and goal directed, with no evidence of delusions, hallucinations, or disordered thinking. His attention and concentration were mildly impaired due to depression; but recent and remote memory skills were intact and intellectual functioning was average. Insight and judgment were fair.  (T. 281).  During the examination, plaintiff reported that he was able to dress, bathe, and groom himself; cook and prepare limited food; perform some general cleaning, laundry, and limited shopping; manage his money; and drive.  Dr. Shapiro noted that plaintiff "gets along well with friends and family." (T. 282).

Dr. Shapiro diagnosed plaintiff with depressive disorder, not otherwise specified.  (T. 282).  She concluded that vocationally, plaintiff "may have difficulty adequately understanding and following some instructions and directions as well as completing some tasks due to attention and concentration deficits secondary to depression."  She further opined that plaintiff "may have difficulty interacting appropriately with others due to social withdrawal."  Dr. Shapiro stated that "[a]ttending work or maintaining a schedule may be difficult due to lack of

motivation and lethargy," and he observed that plaintiff "does not appropriately manage stress."  Notwithstanding plaintiff's statement that he could manage his money, the doctor stated that he "may need assistance" in that regard.  (T. 282).

On February 20, 2008, a state-agency psychiatrist, Dr. W. Skranovski, completed a psychiatric review technique and rating of plaintiff's functional limitations.  (T. 286-99).  Plaintiff was found to have no limitations in his activities of daily living or social functioning, and mild limitations in maintaining concentration, persistence or pace.  (T. 296).  The doctor noted that plaintiff had not experienced episodes of deterioration.  (T. 296).  The doctor concluded that the medical documentation showed no severe functional limitations.  (T. 298).  Dr. Skranovski concluded that plaintiff was able to memorize and carry out tasks, interact socially in a work setting, and adapt to changes.[13]  Additionally, notes from plaintiff's treating sources showed a good response to treatment and no evidence of related functional limitations.  Dr. Skranovski determined that the consultative examiner's statements regarding poor social skills were not supported by her examination.  (T. 298).   He concluded that plaintiff's impairment of affective disorder was not "severe."  (T. 286).

In making his findings regarding plaintiff's functionality, the ALJ rejected the opinions of Dr. Shapiro about plaintiff's alleged vocational and social limitations,

---

[13] Dr. Skranovski's Consultant's Notes (T. 298) referenced information that plaintiff had self-reported.  In a questionnaire that plaintiff completed on December 12, 2007 in connection with his disability application, he reported that he was able to follow spoken and written instructions, and had trouble getting along with "bosses . . . or other people in authority" only in that, "if they are arrogant I give them less than my fullest."  (T. 110).

based, in part, on the analysis of Dr. Skranovski.  Because Dr. Skranovski did not examine the plaintiff, his opinions would be entitled to little weight if they were inconsistent with overwhelming evidence from treating sources.[14]  However, the ALJ properly credited the opinions of Dr. Skranovski over those of Dr. Shapiro,[15] because they were more compatible with the findings of treating sources, such as Dr. Babiak of the VAMC.  The ALJ found that Dr. Shapiro's conclusions were inconsistent with the treatment notes from Family Practice Associates and the VAMC, which indicated that plaintiff had responded well to mental health treatment, and which did not reflect any evidence of persistent functional limitations.  (T. 47).  The ALJ also noted, as did Dr. Skranovski, that Dr. Shapiro's opinions were at odds with some of her reported observations.[16]  This court concludes that the ALJ properly evaluated the competing medical evidence, and determines that his finding, that plaintiff's mental health limitations were not severe, was supported by substantial evidence.

---

[14] *See, e.g., Minsky v. Apfel*, 65 F. Supp. 2d 124, 139 (E.D.N.Y. 1999) (citing *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990)).  *Cf.* 20 C.F.R. § 404.1527(f)(2) (ALJs must consider the findings of state agency medical consultants and other program physicians because they are highly qualified and are also experts in Social Security disability evaluations); *Diaz v. Shalala*, 59 F.3d 307, 313 n. 5 (2d Cir. 1995) (the opinions of non-examining sources may override treating sources' opinion provided if they are supported by evidence in the record).

[15] While Dr. Shapiro did examine the plaintiff on one occasion, she was a consulting, and not a treating physician.  (T. 282-83).

[16] The ALJ found that Dr. Shapiro's suggestion that plaintiff may have difficulty interacting appropriately with others in a vocational setting was inconsistent with plaintiff's statement that he got along well with friends and family, as well as the doctor's observations that plaintiff's demeanor was cooperative and responsive, and that his manner of relating, social skills, and overall presentation were adequate.  The ALJ also found that claimant's complaints of memory and concentration deficits were not supported by Dr. Shapiro's findings that he could count and do serial 3s, and that his recent and remote memory skills were intact.  (T. 47; 281-82).

## 2.    The ALJ's RFC Analysis

It is well-settled that the combined effect of all plaintiff's impairments must be considered in determining disability. *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995).  The ALJ must evaluate the combined effect of plaintiff's impairments on his ability to work, "regardless of whether every impairment is severe."  *Id.* (citing *inter alia DeLeon v. Secretary of HHS*, 734 F.2d 930, 937 (2d Cir. 1984)).  According to the Social Security Rulings, an assessment of RFC takes into account functional limitations and restrictions resulting from the individual's medically determinable impairment or combination of impairments, whether or not all of those impairments are "severe."  *See* SSR 96-8p*; Johnson v. Astrue*, CV-07-5089, 2008 WL 4224059, at *9 (E.D.N.Y. Sept. 8, 2008) (citing 20 C.F.R. § 404.1545(a)(2)).

The regulations define a "non-severe" impairment as one that "does not significantly limit [the plaintiff's] physical or mental abilities to do basic work activities."  20 C.F.R. §§ 404.1521(a).  Basic work activities are defined as "abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b).  These abilities are further defined as physical functions, including the capacity for seeing, hearing, and speaking.  20 C.F.R. §§ 404.1521(b)(1).  These basic work activities also include mental capacities, such as  understanding, carrying out, and remembering simple instructions, as well as the use of judgment.  20 C.F.R. §§ 404.1521(b)(3), (b)(4).  Other mental capabilities–e.g., responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting–are also considered basic work activities.  20 C.F.R. §§ 404.1521(b)(2), (b)(5), (b)(6).

A finding of "not severe" may be made if the medical evidence establishes only a "'slight abnormality'" that would have "'no more than a minimal effect on an individual's ability to work.'"  *Rosario v. Apfel*, 97 CV 5759,1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)(citations omitted).  In *Dixon*, the Second Circuit noted that the threshold severity test should only be used as a screening device to eliminate *de minimis* claims.  54 F.3d at 1030.  The "severity" test should not be used to deny claims without determining whether impairments prevent the claimant from engaging in either his prior work or other substantial gainful employment .  *Id*. at 1030-31.

The ALJ determined that plaintiff had a least one mental limitation–"mild difficulties in maintaining concentration, persistence, or pace."  (T. 47).  Although, as discussed above, there was substantial evidence supporting the ALJ's finding that plaintiff did not suffer from "severe" mental limitations, the plaintiff claimed his depression and anxiety interfered with the performance of his prior job (T. 26-27), and there was some medical evidence indicating that plaintiff had other mild, or even moderate, mental limitations.  (T. 281-82, 335-36).

At the outset of his RFC analysis, the ALJ stated that he considered all of plaintiff's symptoms.  (T. 48).  However, in the discussion that follows, the ALJ addressed only the physical limitations related to plaintiff's arthritis and diabetes, without any mention of mental health symptoms or limitations.  Moreover, in assessing the credibility of plaintiff's complaints of subjective symptoms, the ALJ considered only physical, and not mental health symptoms.  (T. 48-51).  The ALJ's failure to consider or determine plaintiff's mental abilities in formulating the RFC is

legal error.  Accordingly, this case should be remanded with direction to the ALJ to discuss plaintiff's mental limitations and to consider his mental abilities in formulating his RFC.  *See, e.g.*, *Monell v. Astrue*, 08-CV-821 (NAM/VEB), 2009 WL 4730226, at *5-6 (N.D.N.Y. Dec. 3, 2009) (even though the ALJ properly concluded that plaintiff suffered from mental impairments that were no more than mild, he should have addressed those limitations in determining the RFC); *Collins v. Astrue*, 08-CV-1357 (LEK), 2010 WL 786286, at *1 (N.D.N.Y. Feb. 26, 2010).

## C.   The Determination that Plaintiff Could Return to his Past Work

Given the deficiencies in the ALJ's RFC analysis, his finding that the plaintiff could return to his past work is also flawed and should be reconsidered on remand. The ALJ focused on only the physical requirements of plaintiff's prior employment. (T. 51).  However, mental limitations could also have an impact on plaintiff's ability to work as a drug/alcohol counselor, and should be considered.[17]  *See, e.g., Kochanek v. Astrue*, 08-CV-310 (GLS/VEB), 2010 WL 1705290, at *11 (N.D.N.Y. Apr. 13, 2010) ("'. . . in order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical **and mental** demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities.'") (quoting *Kerulo v. Apfel*, 98 Civ.7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct.7, 1999) (emphasis added).

---

[17] On remand, the ALJ may consider using a vocational expert to help him determine the mental demands of plaintiff's past work as a drug/alcohol counselor.  *See* 20 C.F.R. § 404.1560(b)(2) ("A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical **and mental** demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy.") (emphasis added).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**

and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a

proper determination of plaintiff's residual functional capacity to perform his past

work and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to

file written objections to the foregoing report.  Such objections shall be filed with the

Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14**

**DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d

85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated:  November 2, 2010


**Hon. Andrew T. Baxter**
**U.S.  Magistrate Judge**

30